The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zinoff presiding. Good morning, everyone. This is case number 4-220788. In Ray Brittany F. People of the State of Illinois versus Brittany F. Would counsel for the appellant please identify yourself for the record. My name is Vincent Kale. I'm an attorney with the Guardianship and Advocacy Commission. Thank you. And would counsel for appellee identify yourself, please. My name is James Williams, and I'm an attorney for the state. Thank you very much. Mr. Kale, you may start your argument. Good morning. May it please the court counsel. My name is Vincent Kale. I'm an attorney with Legal Advocacy Services, a division of the Illinois Guardianship and Advocacy Commission, and I'm here today representing Brittany F. Today, I'm seeking a reversal of the involuntary treatment order from the trial court in Peoria County. Brittany was a Peoria resident with a history of mental illness. In June 2nd, 2020, Brittany executed a power attorney for health care, naming her mother Tina as her agent. In August 2022, Brittany was once again hospitalized in Peoria. In August 4th, 2022, Dr. Miranda Stokes, a psychiatrist at UnityPoint Methodist Hospital, filed a petition for authority to administer involuntary medication. In Dr. Stokes' petition, she asserted that Brittany does not a health care power attorney. After filing the petition, Dr. Stokes and the rest of her treatment team discovered that Brittany did, in fact, have a health care power attorney. The treatment team documented that Brittany's mother agreed with the treatment that would be beneficial for her to have psychotropic medications. Dr. Stokes did not attach the health care power attorney to the petition for involuntary treatment. Also included in Dr. Stokes' petition was a list of medications checking off 19 medications from the list. On August 9th, 2022, a hearing was held on Dr. Stokes' petition. The state called Dr. Stokes as their only witness. Dr. Stokes testified Brittany was in a state of deterioration and suffering. She lacked capacity to make a reasoned decision about her treatment and that the 19 medications listed in the petition was an individualized treatment plan for Brittany. Of the 19 medications listed in the petition, Dr. Stokes testified to only two of them. Dr. Stokes testified that Brittany does, in fact, have a health care power attorney. At the close of all testimony, and in the closing arguments, the trial court... Good morning. Excuse me for interrupting. I do have a question. At the hearing, then, the information regarding the power of attorney was introduced via testimony. Was that power of attorney ever made part of the record at the trial court level? No, it was not. The hospital sent a copy of the power of attorney to Brittany's attorney the day of the hearing, as you can see from the supplemental report. And the only mention, there was only testimony to the power of attorney.  Let me ask, oh, I'm sorry. May I just ask a follow-up question? And that is, I see that there was a motion to supplement the record on appeal, but was that power of attorney ever made part of this record on appeal? Yes, it's my understanding when we made the motion to supplement, it was not objected to by the state and was made part of the record. Go ahead, Justice. No, I finished the question. Thank you. Let me ask a question. I understand that that's part of the appeal, or one of the points of the appeal. What should have happened in the courtroom when the power of attorney was testified about? Two things should have happened. One, the power of attorney should, the petition should have been amended to include the power of attorney. That's number one. Two, there should have been a discussion with Brittany's agent, her mother, whether she was in agreement with the medications listed in the petition. And if there was an agreement with her, with the medication listed in the petition, there should not have been a hearing at all. Okay. Do you, does the record disclose whether her mother was in the courtroom? Her mother was, no, the record does not disclose that her mother was in the courtroom. Does the record show if anybody mentioned or thought about contacting her mother and having her brought to court? Yes. If you look at the record under the dispositional report, it states that the clinician that filed the dispositional report contacted Brittany's mother, and she was in agreement with that Brittany needed psychotropic medications at the time. For whatever reason, that was not brought to the attention to Brittany's doctor or the state before the hearing. Would it be fair to say that everybody that was in a courtroom that was participating in the hearing knew before the hearing concluded that she had a power of attorney? I cannot say that everybody knew. I can say Brittany's attorney was given a copy prior to the hearing. Whether the state talked to their witness or talked to the clinician that filed the report, I cannot state. However, we do know that there was a power of attorney in possession by the hospital. They gave it to Brittany's attorney, and if the state talked to the clinician that filed the report, they could have got a copy of the health care power of attorney. There was, however, testimony about the power of attorney. Correct. There was testimony direct from Dr. Stokes, and Brittany's attorney, even on cross-examination, even elicited that there was a health care power of attorney. It seems to be clear that the judge knew. Correct. There was a power of attorney, or everybody thought there was a power of attorney. Correct. If you look at the transcript, even in the judge's ruling, he makes mention that there was a health care power of attorney, that it should have been attached. Even after he made the ruling, he stated that we should find that power of attorney and attach it for the record. What should the judge have done? The judge should have, when they mentioned that there was a valid power of attorney, the hearing should have stopped. There should have been discussions to make sure the power of attorney was valid. The power of attorney should have been produced, attached to the petition, amended to be attached to be so as part of the record. Then there should have been discussions outside the presence of the judge, I would tell you, to say, let's talk to her agent or her mother. These are the medications that we want to give her. Is her mother going to be agreeable? When a person has a valid health care power of attorney, they're putting their agent in charge of their care. Basically, when Brittany had capacity, she made a decision that her mom should be in charge of her care because she did have this history of mental illness. When that was found out, everything should have stopped. There should have been time taken to see, does the mother agree with the medications listed? If the mother agreed, then there would be no need for court for the hearing. Let me ask you a second question. Let's assume for the moment that happened and the mother agreed. Do we still have a problem with the number of medications? Yes, that is an issue. However, if you look at the record, Dr. Stokes was pretty adamant she wanted to give two medications, the lithium and the Zyprexa. I'm just guessing, but if they would have stopped the hearing and talked to Brittany's mother, she would have went to her and said, we want to try the lithium and the Zyprexa. And if that didn't work, they would have gone back to her with different types of medication. I highly doubt that the doctor would have said, I want to try all these 19 medications right now. But that, counsel, is speculation. We really don't know what would have happened. But I'd like to turn to the sufficiency of the doctor's testimony. The doctor is an expert, certainly even just having finished training. What additional information, if any, should have been adduced with respect to the benefits and side effects of the medications that were on the list that was provided in court? Number one, the names of the medications. Like I stated earlier, there are only two medications that Dr. Stokes testified to, and that would be the lithium and the Zyprexa. We have the petition, but as you know, a petition is not evidence. She didn't even give the names of the medication. She could have talked about the class of the medications. She could have talked about the dosage, the mode of administration. If she was going to give the medications in combinations or she's going to go one at a time, she needed to talk about the risks and the benefits of each and one of the medications listed in her petition. And that list of medications was not introduced as an exhibit at the hearing? It was introduced as an exhibit. However, it was never admitted. But even if the petition was admitted into evidence, it still does not rise to the level of saying that the state can rule the benefits outweigh the harm if you're not going to even talk about them. Dr. Stokes testified that Brittany has bipolar, and she thought that the lithium and the combination with the Zyprexa was a good starting point because she had that medication in the past. There's no testimony why she needed the other 17 medications in the petition. And if you look, Dr. Stokes testified that Brittany had side effects of the geodine, but she still included geodine in the petition. When a petition is brought in front of the court, the judge has to take the petition as whole. He can't piecemeal and say, well, I'll take this one, I'll take that one. He needs to have all the medications or none of the medications. In this case, we don't even have that. We have 19 medications. Dr. Stokes talking about two, about the benefits and the side effects, and then talking about Brittany having the side effects of the geodine. Well, with respect to the geodine, though, there may have been benefits that outweighed whatever side effects there were. Isn't that correct? That is correct. But there's no testimony of even the benefits of having the geodine on there. We pretty much went through why the petition needed to be amended and what they needed to do. And I just want to bring back a point that the judge made. And this is a problem that happens in mental health cases where judges hear, judges know there's an issue, but what do we do? The judge in his ruling stated the court is aware that the health care power attorney. I do think that the court should have been updated if and when I think the hospital should make a good fake attempt to get a copy of the health care power attorney. And I think it should be filed in the court in the future so that if there's the court file and there's a record of it. In mental health cases, specifically petitions for involuntary treatment, it is an element that the state have to make a good faith attempt to make, to have it, to have any advanced directives such as the health care power attorney. In this case, there was a health care power attorney. Dr. Stokes should have amended her petition when she didn't amend her petition. And then it falls upon the state to amend the petition once they find out about it. And then when the state doesn't do it, it falls upon Brittany's attorney to amend the petition to include the health care power attorney. Since those things didn't happen, this case should be reversed. Another second reason why this case should be reversed, as we talked about, the state only testified to two of the medications. I'm sorry to interrupt, but isn't it clear from the testimony, however, that there was certainly no intent to administer these medications all at the same time, but that there was testimony that, as you had mentioned earlier, that two medications would be tried. And then if for whatever reason they did not work, then the list would be available so that they did not have to come back into court. What is wrong with that approach? The reason what's wrong with that approach is there was no testimony why you needed those other medications other than we might need something should these don't work. That's perfectly fine to say we need alternatives, but you can't talk about two medications and then have the judge grant for 17 others, which you don't talk about. Also, in order for the state to prove that the benefits outweigh the harm, if you're going to use medications and combinations, you need to talk about the benefits of the medications and combinations as well as the harm. That's what's called the polypharmacy. It's simple. If you go to court and you get some medications and you find that the person has a side effects or not responding to it, you do a motion to modify. It seems like what happened here is it's a matter of convenience. And what we're talking about are powerful medications that have long-lasting side effects to people that take it. I do these cases all the time. One of the things that they talk about, especially with psychotropic medication, is tardive dyskinesia. Once you get it, there's pretty much nothing you can do. You can take medications to lessen it, but you're getting it. We should not be treating these cases as, oh, well, it's inconvenient to come back to court when we're issuing these powerful medications to people. If you want these medications, you need to provide testimony to the medications. If you're going to use these medications in combination, there should be testimony. There shouldn't be, well, we think these will work, and if they don't work, we want these other ones. If that's the case, then you can come back. Excuse me. But, again, this is not a layperson testifying to this. This is a trained psychiatrist testifying to this. Yes. And what I'm saying is if she wants these medications, she should provide testimony so the judge can say, you know what, the benefits. Just like let's take the G&R for example. She talked about that Brittany suffered the side effects, but she could have said, you know what, the side effects Brittany suffered, the benefit of this medication will outweigh the harm. But we don't even have that. So in these cases, these experts need to talk about every single medication that they have in their petition. They need to talk about any combinations that they have. And should those medications don't work, they can file a motion to modify later on down the road. So it shouldn't be we need all these medications, and if these don't work, we want to be able to go to another one. It should not be up for a matter of convenience. Also, I know Dr. Stokes is an expert in the field of psychiatry. However, her having 19 medications is not an individualized treatment plan, and because of that, Brittany's rights were violated. But as I stated, in her petition was a pre-printed form for 25 medications. Of the 25 medications, there's an X placed next to 19 of them. As we talked about, before a court may authorize involuntary medication, it must find by clear and convincing evidence other least restrictive services have been explored and found inappropriate. Besides being an element for proof of environmental involuntary treatment proceedings, this principle of least restrictive alternative is embodied in Code 1, in the Mental Health Code in Article 1, governing recipient's rights. Specifically, 2-102 provides and relevant that a recipient of services shall be provided with adequate immune care or services in the least restrictive environment. Like I stated, the Code does not say a fact finder can pick and choose which medications. It's either all the medications or none. Least restrictive should incorporate a person's past treatment with medications and reflect the individualized treatment plan so that if a person has past treatment and was effective with the minimum or no side effects, the individual treatment regimen may be considered to be least restrictive than an untried, unjust regimen. This court should construe the regimen that other least restrictive services have been explored and found inappropriate to require the least number of medications necessary to treat the respondent. According to the state in this case, the psychiatrist took a kitchen sink approach to the medication as a matter of convenience and not to come back to court. Dr. Stokes did not carefully curate a medication regimen for Brittany, even though she had information about Brittany's previous experience with the medication listed in the petition. Brittany had taken the medication Geodon before and suffered side effects, yet Dr. Stokes included Geodon in her petition. When the trial court authorized 19 medications to a person with known history of effective treatment with medication, the court failed to prevent Brittany's right of least restrictive treatment. Like I stated, like I stated earlier, we can all agree that Dr. Stokes is an expert. But we should all agree that you having 19 medications is not individualized to Brittany, specifically when you're including a medication that she had suffered side effects in the past. Dr. Stokes should have looked at Brittany's history and said, see what medications that she did well on, and then started with those medications. Using 19 of the 25 medications at her disposal is not an individualized treatment plan, therefore not being least restrictive. As I stated earlier, in these mental health cases, we're authorizing powerful medications to people. This shouldn't be a pro forma, well, this person has a history of mental illness, look at the behavior that they did, grant this petition, give me all the medications. No, there should be time taken to see if there's a healthcare power of attorney, and if there is, we should just stop. If somebody did well on medication in the past, you should be going to court, have an individualized treatment plan just for those medications. And if those don't work, you come back and you modify those. We should not be authorizing any medications without hearing the benefits and side effects of each of the medications. And if the hospital is going to ask for medications in combination, we should talk about the benefits and the side effects of the medications in combination. Because the child court committed several errors, I feel that this case should be reversed. Are there any questions? Do I see any questions, Justice Connect or Justice Vansel? I don't believe so. Thank you, counsel. Thank you. Mr. Williams? Thank you, Your Honor. May it please the court, counsel. My name is James Ryan Williams, and it is my privilege to represent the state before this honorable court. As an initial matter, this appeal is, of course, moot because the 90-day order is long expired, and this court can no longer grant effective relief. However, the appeal is not just moot. The state actually agrees with respondents' arguments 1 and 2 that the underlying order authorizing the involuntary administration of medication was invalid for two separate reasons. First, the existence of the power of attorney that was not attached to the petition. And second, the medication order authorizing a medication that previously caused an adverse reaction to a respondent. With respect to this first issue, in the case of Denitra P., this court recently reversed the medication order. Whereas here, the petitioner became aware of the medical power of attorney but did not attach it to the petition. But in that case, of course, that was actually discovered during the trial, whereas here it was discovered even before so. So that's the initial reason that we agree that the underlying order is indeed invalid. And then, of course, in the case of Mary Ann P., our Supreme Court held that Section 2-107.1 does not permit the selective authorization of psychotropic medication. And then based on that decision, the appellate court subsequently invalidated an order for the involuntary administration of medication, whereas here, the order authorized the administration of a drug that previously caused an adverse reaction. And as counsel pointed out, here the doctor testified that the respondent had previously had an adverse reaction to Geodon, and yet the court's order still authorized the administration of that drug. And for that reason, the order is otherwise invalid. I'm going to stop. Do I hear a but coming, or are you arguing in favor of the respondent? Is there a but, or are you conceding? No, we readily conceded, Your Honor. I guess the only but, if you will, is at least based on my review of the law, I'm not really sure how we necessarily get to the third issue. And to be candid, Your Honor, the state doesn't even necessarily disagree with counsel on that. It's just a matter of procedure. It seems that where there are two grounds upon which to vacate the order, reaching the third issue could not affect the outcome of the case, the kitchen-seek approach, and the state's not aware of any – Wait a minute. How are you distinguishing the third issue stated to us? I'm sorry? How are you distinguishing what the third issue is when you state it for us? Oh, as I understand it, counsel has argued that the order is invalid for yet a third reason, because it authorized the administration of 19 different psychotropic medications without – essentially, it wasn't an individualized treatment plan. And while maybe – perhaps the state doesn't necessarily agree with that issue, I did not see binding precedent on point that requires a concession. And as a matter of procedure, I also did not find case law that allows the court to, via an exception to mootness, reach a – address an order that's otherwise invalid for one or perhaps two other reasons, simply to explain why it's invalid for yet a third reason. So, again, the state doesn't necessarily – I would suggest to you that Peoria County is a new county in the 4th District. And I would suggest to you that nobody in the courtroom knew what the hell they were doing, to put it bluntly. And that this should have been addressed by the state's attorney. This should have been addressed by the respondent's lawyer. This should have been addressed by the judge. So, no fault to you. You're in the position of arguing on behalf of the state. But this – if this practice were allowed to continue, or that they believed that somehow this was appropriate, or this expert witness, who is more recently finished with training, would think that this would be somehow acceptable, that would be an egregious mark on the mental health system in that county. That's my personal opinion. The other judges may not agree with that. But I understand your point about why argue about something that's not necessary, even if I individually might think that's necessary as a matter of public policy. And it probably will arise again, maybe not against this respondent. But I've said enough. If you'd like to argue further. I mean, I'll just say council did an exceptional job in this case. The state simply – I found myself in a position where I didn't feel like the case law allowed the concession on the third issue. But at the same time, we couldn't necessarily – despite the adversarial process, we couldn't necessarily take an adversarial position on the matter. But again, council made a number of fantastic points. And candidly, the state's attorney in this matter doesn't even really disagree with any of these arguments. So, I just kind of found myself in a position where I wasn't exactly – all I could hang my hat on was the procedural issue, just to be candid. Thank you, council, for your candor with respect to that. But I guess I have a follow-up question. And that is, what is there to preclude this court from addressing each of the issues that is raised or that are raised by the facts of this case? So that I don't see anything that would preclude this court from addressing the, quote, kitchen sink approach to these hearings. I mean, if there is an exception to mootness that allows us to go ahead and render an opinion on the merits, then why wouldn't this issue be appropriate for this court to opine on? And whether someone considers it dicta or not, I mean, I think that's extraneous to whether or not this court can and should address it. Is there any authority that you know of that would preclude this court from addressing that issue? Well, on that matter, Your Honor, I – again, I wasn't able to find authority that – really, one way or the other, I wasn't able to find authority. The authority I was able to find that would preclude it is just really general notions of law that this court typically would not render advisory opinions. This appeared to fall in line with an advisory opinion if the order was otherwise invalid for two other reasons. And so as a matter of respect to the adversarial process, as I said, that's essentially all the state could hang its hat on in this matter. And so I submitted the argument. But, again, there may well be exceptions in the mental health code or in mental health line of case law. Of course, that would perhaps make sense because of the unique nature of those cases. They're always going to be moot. So I understand that, Your Honor. So, again, just as a matter of respect for the adversarial process, the only thing I could really submit to this court with respect to the third issue was that it would perhaps arguably fall in line with an advisory opinion, which generally this court doesn't do. However, if I can take it one step further, there are certainly two exceptions that might apply here, one of which is the public interest exception. And that does have, as an aspect of it, an educational component, does it not? I mean, those who may need to know in the future how to handle this issue, that comes within the public interest exception, does it not? I totally agree, Your Honor. And, again, as far as my research, what this boiled down to was not necessarily that we couldn't reach that third issue as a matter under the public interest exception, but because it was indeed a third issue, a third means by which the order was invalid. At that point, it seemed like possibly the mootness exception was maybe being taken, like, a little bit too far. I may be mistaken on point, but, again, as a matter of respect for the adversarial process, that's all I could submit to this court. Thank you. Very nicely presented, counsel. Thank you. Do you have anything further you wish to argue? No. Unless there are any further questions, I would just ask that this court reverse for one, reverse for arguments one or two. Thank you. Mr. Cale, do you have any rebuttal or not? I'll be brief. We feel that the court should reverse on all the issues that were presented in our brief, not only that the confessed errors by the state. As you look at two recent mental health cases, NREA-LEGO and RAVE-Harlan H., those are two cases where the court heard argument and the state confessed errors. However, the court ruled on all of the issues that were presented in the brief, not just with the confessed errors. And as you talked about earlier, the public interest exception has a component of we need to educate people in the past and educate people in the future. Our Supreme Court has taken upon themselves to conduct, last year, information sessions where they brought an expert to give reviews because they were getting a lot of cases where, as Jessica Knapp talked about, a lot of people in these courtrooms have no clue what they're doing. And so there's always a need to educate, and I don't think giving a ruling on an issue that was not confessed is dicta. It was presented in the brief. There were arguments where there's for it, and there needs to be a ruling on it. We feel that there are two mootness exceptions, the public interest and the capable of yet repeating. So therefore, because there's those two mootness exceptions, you are free to rule on all of the issues that were presented. And counsel is right. There's no definitive case law on whether 19 medications or, as the state called it, the kitchen sink approach is least restrictive. And I'm submitting to you today, when you have 19 medications, specifically, maybe if this person is new, you don't know anything about them. But when you have a person who, if you look at the record, Brittany was at this hospital in 2019. The doctors, there should be medical records on there. The doctor even testified that she did well on these two medications. The doctor testified that she had suffered side effects of Genome. There should have been an individualized plan because an individualized trend is most least restrictive. As I stated earlier, because there's two exceptions. Counsel, one good rule of appellate advocacy and trial advocacy as well. When the court is leaning your way and you've already won, it's a good time to sit down. That's a suggestion, but you're free. And with that, I will open up to any questions. Other than that, I'm finished. Thank you, counsel. Thank you both for your arguments this morning. The court will take the matter under advisement and render a decision in due course. Court stands in recess at this time.